UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

S.K.,

Petitioner,

v.

LAURA HERMOSILLO, ET AL,

Respondent.

Case No. 2:26-cv-00789-TLF

ORDER GRANTING MOTION FOR EAJA FEES

Petitioner's counsel moves under the Equal Access to Justice Act ("EAJA") for attorney's fees and costs. *See* Dkt. 19. Respondents oppose, or in the alternative, request the Court stay the enforcement of any fee award to allow the Supreme Court to determine whether EAJA encompasses habeas litigation for immigration detention. *See* Dkts. 26, 29. For the following reasons, the Court GRANTS an award of attorney's fees. The fee award is STAYED pending the Supreme Court's decision in *Palacios v. Liggins*, No. 25-1223.

## I. LEGAL STANDARD

"The EAJA provides[] . . . that in an action brought by or against the United States, a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1089 (9th Cir. 2022) (citing 28 U.S.C. § 2412(d)(1)(A)). The government

bears the burden of demonstrating its position was substantially justified. *See id.* (citing *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001)). "The fee applicant bears the burden of documenting the number of hours expended in litigation and must submit evidence in support of those hours worked." *Zavorin v. Wamsley*, No. C26-0173-DGE, 2026 WL 879246, at *2 (W.D. Wash. Mar. 31, 2026) (first citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); and then citing *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992)).

## II. <u>FINDING OF FACT</u>

Petitioner is a native and citizen of Afghanistan.[1] *See* Dkt.10, Declaration of Deportation Officer Javier Delgado ("Delgado Decl.") ¶ 1. On January 13, 2023, petitioner entered the United States and was processed as an Unaccompanied Alien Child ("UAC") under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") and placed with the Office of Refugee Resettlement ("ORR"). *Id.* ¶ 4; Dkt. 11, Declaration of Lawerence Van Daley ("Van Daley Decl"), Ex. 1 (2023 Notice to Appear). On May 19, 2023, a Notice to Appear ("NTA") was personally served on petitioner and charged petitioner as a noncitizen "present in the United States without being admitted or paroled"; not as an "arriving alien." Dkt. 11, Van Daley Decl., Ex. 1.

On February 1, 2024, petitioner filed form I-589 Application for Asylum and Withholding of Removal with United States Citizenship and Immigration Services ("USCIS"). Dkt. 10, Delgado Decl. ¶ 8; Dkt. 5 at 6. On March 13, 2024, an Immigration

---

[1] Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C), the Court makes factual findings and "state[s] its conclusions of law as provided in Rule 52(a)" separately. *See* Fed. R. Civ. P. 52(a)(1), 54(d)(2)(C).

Judge ("IJ") granted the parties joint motion to dismiss under 8 C.F.R. 1239.2(c). Dkt. 11, Van Daley Decl., Ex. 3.

On or about December 24, 2025, petitioner went to a gathering at the Peace Arch located on the border between the United States and Canada and crossed the Canadian border. Dkt. 5 at 5. On December 24, 2025, petitioner was returned to the United States by Canadian Border Patrol after petitioner had entered Canada without inspection. Dkt. 10, Delgado Decl. ¶ 10.

Petitioner was apprehended by Canadian authorities and "his request for asylum was denied under the Safe Third Country Agreement between the United States and Canada." Dkt. 11, Van Daley Decl., Ex. 5; Dkt. 10, Delgado Decl. ¶ 10. Petitioner was transferred to the Tacoma Northwest Detention Center the same day. *Id*. The Warrant for Arrest and Order to Detain or Release Alien authorized the arrest due to "the pendency of ongoing removal proceedings against the subject." Dkt. 11, Van Daley Decl., Ex. 8.

On January 3, 2026, a second NTA was issued based on the December 24, 2025 entry. *Id.* at Ex. 6. On or about January 16, 2026, petitioner filed a motion in the immigration court to terminate the removal proceedings. Dkt. 5 at 7. An immigration judge granted petitioner's motion to terminate the NTA on January 27, 2026. *Id*. at Ex. 10.

The government continued to detain petitioner in the absence of an NTA, and on February 13, 2026, issued a third NTA to petitioner. Dkt. 11, Van Daley Decl., Ex. 7. This time the NTA ignored the December 24, 2025 entry from Canada and restored "the

original 2023 entry date and the same charge of removability." Dkt. 9 at 3 (citing Delgado Decl., ¶ 13; Van Daley Decl., Ex. 7).

Respondents took the position that petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b), not discretionary detention under 8 U.S.C. § 1226(a), pursuant to the Board of Immigration Appeals decision *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *See* Dkt. 9 at 5–7. Respondents' cursory briefing did not meaningfully address the due process arguments made my petitioner and instead did an analysis of prolonged mandatory detention under 8 U.S.C. § 1225(b) pursuant to *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019). *Id.* at 7-9.

This Court held that petitioner was detained under 8 U.S.C. § 1226(a), not subject to mandatory detention under 8 U.S.C. § 1225(b), and that he was entitled to notice and a hearing before being deprived of his liberty and was therefore in custody in violation of his Fifth Amendment right to due process. *See* Dkt. 16. The Court granted his petition and ordered his immediate release and established permanent injunctive relief regarding any future re-detention. *Id*.

Petitioner now seeks an award of $10,150.00 in attorney's fees at the rate of $700 per hour for 14.5 hours worked on this case, or, in the alternative, fees at the adjusted statutory rate of $ 258.46 per hour for a total of $3,747.67, as well as costs in the amount of $5.00. Dkt. 19 at 1. Respondents argue that the government is immune from such an award, respondent' litigation position was substantially justified, and no special factors justify an enhanced hourly rate. *See* Dkt. 26.

## III. <u>CONCLUSIONS OF LAW</u>

### **A. Availability of EAJA Fees**

As an initial matter, respondents argue that the EAJA's limited waiver of sovereign immunity does not authorize attorney fees in habeas proceedings challenging immigration detention. Dkt. 26 at 7. The Court finds persuasive the several courts in this Circuit that have rejected these arguments. *See, e.g.*, *Morales Jimenez v. Bostock*, Case No. 3:25-cv-00570 MTK, 2026 WL 1893763, at *2 (D. Or. July 1, 2026); *N.A.L.C. v. Wofford*, Case No. 1:25-cv 01917-KES-CDB (HC), 2026 WL 1724739, at *2 (E.D. Cal. June 15, 2026); *Doe v. Chestnut*, Case No. 1:25-cv-01372-CDB (HC), 2026 WL 1459808, at *2 (E.D. Cal. May 25, 2026). The Court adopts the reasoning from *Morales Jiminez*, 2026 WL 1893763, at *2, and concludes the EAJA's waiver of sovereign immunity applies for purposes of attorney fees.

**B. Substantial Justification**

Because the Court granted petitioner's petition for writ of habeas corpus and ordered him released from custody, petitioner is the prevailing party in a civil action brought against the United States. Dkt. 16 at 9. *Buckhannon Bd. & Care Home Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (holding a prevailing party is one who was awarded at least some relief by the court).

Substantially justified means "the government's position must have a reasonable basis both in law and fact." *Cardozo v. Bostock*, No. C25-0871-TMC, 2026 WL 304491, at *1 (W.D. Wash. Feb. 5, 2026) (quoting *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013)). "The inquiry into . . . substantial justification . . . focus[es] on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). The first question

"by definition concern[s] only the merits of th[e government] action." *Id.* The second question "encompass[es] the first inquiry to the extent that the government chooses to defend the merits of the challenged action[, but] . . . must also focus upon extraneous circumstances bearing upon the reasonableness of the government's decision to" litigate the case. *Id.* "[E]xtraneous circumstances bearing upon the reasonableness of the government's decision[,]" include "relevant legal or factual precedents." *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1090 (9th Cir. 2022) (quoting *Oregon Nat. Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992)). "A 'string of losses' or a 'string of successes' can also be an objective indicator of reasonableness." *Id.* (first quoting *Pierce v. Underwood*, 487 U.S. 552, 569 (1988); and then citing *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 619 (9th Cir. 2005)). Ultimately "[a] position that 'was not contrary to clearly established law' is . . . substantially justified." *Meza-Vazquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021) (quoting *Li v. Keisler*, 505 F.3d 913, 920 (9th Cir. 2007)).

Here, petitioner was afforded no process – before or after being re-detained. At the time of petitioner's arrest, he was not provided with notice of the allegations or an opportunity to respond prior to, during, or immediately after his arrest. Dkt. 19 at 5. There was no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions before petitioner's detention. *Id*.

"The base requirement of the Due Process Clause is that a person deprived of [a liberty interest] . . . be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Buckingham v. Sec'y of U.S. Dep't of Agr.*, 603 F.3d 1073, 1082 (9th Cir. 2010) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149

F.3d 971, 984 (9th Cir. 1998)). As in other cases that have found re-detention of individuals similarly situated to petitioner, without notice or opportunity to be heard, violates due process, this case did not announce a new rule. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1321–24; *see also Zavorin v. Wamsley*, No. C26-0173-DGE, 2026 WL 309733, *5 (W.D. Wash. Feb. 5, 2026). Respondents fail to demonstrate that petitioner's case is distinguishable.

In arguing their position was substantially justified, respondents point only to two circuit decisions that adopted their litigation position on mandatory detention. *See* Dkt. 26 at 8 (first citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); and then citing *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)). Resolution of this matter, like others involving re-detention of individuals previously granted release, rested on the Due Process Clause's requirements and not statutory interpretation, rendering respondents' observation inapposite. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1323; *cf. United States v. Marolf*, 277 F.3d 1156, 1161–62 (9th Cir. 2002) ("When a party challenges a government action on procedural or due process grounds alone, the merits of the underlying regulation[s] . . . are not proper subjects for our review. . . . [W]e look only to the government's failure to provide notice in determining whether the government's underlying action was substantially justified.").

As petitioner's counsel notes, respondents "provide no explanation why they claimed they had section 1225 mandatory detention authority under the third NTA issued in this case, when that NTA had restored the original 2023 entry allegations, when petitioner was an unaccompanied minor, and not subject to mandatory detention." Dkt. 27 at 12.

Accordingly, respondents have not met their burden to show the underlying agency action, or their litigation position, was substantially justified. The Court therefore finds an award of fees appropriate.

**C. Enhanced Fees**

EAJA caps attorney's fees at $125 per hour, adjusted for inflation "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Here, petitioner seeks an enhanced fee award at $700 per hour. Dkt. 19 at 1.

Three elements must be met to satisfy 28 U.S.C. § 2412(d)(2)(A). Specifically, a court may award market rates based on the limited availability of qualified attorneys when the attorneys possess (1) "distinctive knowledge and specialized skill" that was (2) "needful to the litigation in question" and (3) "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912–15 (9th Cir. 2009).

Respondents do not appear to dispute petitioner's argument in support of the first two elements. *See* Dkt. 26 at 9. Respondents contend petitioner's counsel has not demonstrated that qualified counsel was not available at lower rates than those counsel seeks to recover for this case. *Id*. at 10.

To make that showing for the third element, petitioner must show "that qualified counsel was not available for this litigation at the statutory maximum hourly rate." *Nadarajah,* 569 F.3d at 915. To do so, "'[n]o one expects the plaintiffs to conduct statistical surveys.'" *Id*. (quoting *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 493 (1st Cir. 2000)). Rather, a petitioner can, for example, submit a declaration " 'say[ing],

with at least modest support...that as a practical matter the plaintiffs would be unable to find a[n]...expert for $125.' " *Id*. (quoting *Atl. Fish Spotters Ass'n*, 205 F.3d at 493).

Here, in support of this third element, petitioner's counsel contends he made a sufficient practical showing of the unavailability of lawyers in the state that were available to take the case at the adjusted statutory rate of $258.46. Dkt. 19 at 9-10; Dkt. 20, Declaration of Petitioner's Counsel, at 3-4.

Counsel also provides the declarations of Adam Boyd, a Washington attorney practicing immigration law exclusively for the past 13 years, stating he would not have accepted the case at the statutory rate (Dkt. 23 at 4), as well as Shara Svendsen, an Oregon attorney practicing immigration law since 2008, stating the same. Dkt. 22 at 4.

Petitioner's counsel states the following in his declaration with respect to the lack of available lawyers to perform immigration work:

> "The lack of available lawyers is closely related to the problems of specialized knowledge and special training. All the immigration lawyers I know are overworked, and a number have stopped accepting new clients. Another major reason for the shortage of lawyers is that starting in about October 2025, the present administration organized a nation-wide practice of arrests, revocations of orders of supervision, and other measures intended to take as many persons into immigration custody as possible. The impact was particularly great in the Western District of Washington, because the ICE detention facility is located in Tacoma. That facility also houses all detainees arrested in the state of Oregon."

Dkt. 20 at 3-4. The other attorneys make similar statements in their declarations. Dkt. 23 at 3-4, Dkt. 22 at 3-4. Petitioner's counsel also adds:

> This case was filed on March 9, 2026. To attempt to arrive at the number of lawyers available on that day, I looked at the non-citizen habeas cases (CFS code 463) filed in this district in the week prior, specifically the dates from March 3 to March 9, 2026, inclusive. There were a total of 38 cases filed for 53 petitioners. Of these petitioners, 21 were represented by private law firms, a further 21 were represented by non-profit legal services, and 11

> were pro se. total of 13 private firms represented the 21 petitioners who had private counsel. Two of these law firms or practices had offices only in Oregon, filing one case each, leaving 11 in-district lawyers filing a total of 19 cases. Four law firms accounted for the majority (10) of the 19 cases filed by indistrict counsel. By comparison, there are about 600 lawyers who are members of the American Immigration Lawyers Association ("AILA") Washington chapter.

Dkt. 20 at 4; *see also* Dkt. 20-2.

In response, respondents cite two cases in which private immigration attorneys accepted the EAJA's statutory rate. *See* Dkt. 26 at 10 (citing *M.M. v. Hermosillo*, No. 2:25-cv-2074-TMC, 2026 WL 252076 (W.D. Wash. Jan. 30, 2026) and *Tzafir v. Blanche,* 2:25-cv-2070-JHC-GJL, 2026 WL 1429328, at *3 (W.D. Wash. May 21, 2026)).

Even though the attorneys in those cases accepted the statutory rate, the Court makes its determination here based on the evidence presented here. The Court finds petitioner has made a showing that an award of enhanced fees is justified for petitioner's counsel due to the limited availability of qualified attorneys for this proceeding. *See* 28 U.S.C. § 2412(d)(2)(A). In particular, Mr. Purcell's declaration contains a statistical analysis of the availability of immigration lawyers in this District that goes beyond what is required to make a showing of the third element here. Respondents have not meaningfully responded to such evidence.

In sum, the Court finds petitioner has made a showing sufficient to satisfy 28 U.S.C. § 2412(d)(2)(A)'s prerequisite that competent counsel was "not available for this litigation at the statutory maximum hourly rate." *Nadarajah*, 569 F.3d at 915.

**D. Amount and Reasonableness of Fees**

Hourly rates are reasonable when the "requested enhanced rates are 'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.' " *Nadarajah*, 569 F.3d at 916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)). Counsel provides numerous examples of Courts in this district awarding enhanced fees ranging from $550 to $900. Dkt. 20-3 at 2. Based on the declarations submitted by counsel, and the rates awarded in the cited cases, the Court finds $700 an hour to be a reasonable rate for petitioner's counsel. Accordingly, petitioner is awarded fees under the EAJA in the amount of $10,155.00.[2]

**E. Respondent's Request to Stay**

Respondents argue that the Court should stay the enforcement of any fee award pending the Supreme Court's decision in *Palacios v. Liggins*, Case No. 25-1223.

District courts have the "discretionary power to stay proceedings." *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936)). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. The court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Levya v. Certified Grocers of Cal.*, Ltd., 593 F.2d 857, 863–864 (9th Cir. 1979)). "This rule applies whether the separate proceedings are judicial,

[2] 14.5 attorney hours x $700, plus an additional $5.00 in costs. Dkt. 19 at 2, 11.

administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863–64.

In determining whether to grant a stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. In addition, the "proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Respondents argue that *Palacios* may be dispositive of the pending fees motion in this case because the Supreme Court granted a writ of certiorari as to whether the "any civil action" language found in the EAJA includes an action seeking a writ of habeas corpus to challenge civil immigration detention. *See Palacios*, No. 25-1223. Petitioner contends the three factors weigh against a stay. Dkt. 27 at 8-12 (citing *In re PG& E Corporate Securities Litig*., 100 F.4th 1076, 1085 (9th Cir. 2024)).

On balance, the Court finds that it would be in the interest of judicial economy to hold the award of fees in abeyance pending the decision in *Palacios v. Liggins.*

## IV. CONCLUSION

1. An amount of $10,155.00 SHALL be awarded to petitioner pursuant to the EAJA, but enforcement of the award is STAYED pending the Supreme Court's decision in *Palacios v. Liggins*, No. 25-1223.
2. The parties are DIRECTED to file a joint status report within fourteen (14) days after the Supreme Court issues its opinion in *Palacios*.
3. The Clerk is directed to send copies of this Order to all counsel of record.

Dated this 10th day of November, 2026.

Theresa L. Fricke
United States Magistrate Judge